UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **WENDY M. HARPER** | : | **DOCKET NO. 17-CV-01337** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **COTTON LOGISTICS INC., ET AL** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's Motion to Remand. Doc. 13. Defendants oppose remand. Doc. 16.[1] The motions have been referred to the undersigned for the purpose of issuing a Report and Recommendation. For the reasons that follow, **IT IS RECOMMENDED** that plaintiff's Motion to Remand be **DENIED** and that all claims against defendant Kyle Williams be **DISMISSED WITHOUT PREJUDICE.**

### I.
### BACKGROUND

Wendy Harper, a Louisiana resident, filed suit on August 25, 2017, in the 14th Judicial District Court, Parish of Calcasieu, Louisiana. Doc. 1, att. 1, p. 4. Among other claims, she seeks to recover for intentional infliction of emotional distress ("IIED") under state tort law based on alleged sexual harassment. *Id.* at pp. 8–11. She named as defendants two corporations, Cotton Logistics, Inc. and Cotton Holdings, Inc. (together, "Cotton"), and six Cotton employees: Peter

---

[1] Defendants filed a Motion to Dismiss before the current Motion to Remand was filed. Doc. 8. "[A]s long as a nondiverse party remains joined, the *only* issue the court may consider is that of jurisdiction itself." *International Energy Ventures management, L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016). Accordingly we address this motion prior to ruling on the earlier filed.

Bell, Randall Thompson, Forrest Jackson, Henry Hurst, Johnny Slaughter, and Kyle Williams, all of whom she refers to collectively as the "management team." *Id.* at pp. 2–3. Only Williams is a Louisiana resident. *Id.* at p. 3.

According to her petition, plaintiff began working as a regional vice president for Cotton on April 10, 2015, and was immediately "subjected to a practice of regular, systematic, and at times daily, sexual harassment" and gender-based discrimination by the management team. Doc. 1, att. 1, pp. 3–4. She asserts that the misconduct was "part of an overall intentional strategy … to force her resignation." *Id.* at p. 8. Plaintiff avers that she suffered "extreme emotional distress" because of the harassment, which caused her to seek medical treatment for depression and other ailments. *Id.* at p. 4. She states that she "endured the harassment and discrimination for as long as she could" but "was marginalized, ostracized, and demoralized … and shaken to the point that she had no choice but to resign." *Id* at p. 8.

Defendants removed the case to this court on October 18, 2017, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Doc. 1, p. 3.[2] Defendants maintain that Williams, the only non-diverse defendant, was improperly joined because plaintiff has not stated a viable cause of action against him. *Id.* at p. 4. They argue that plaintiff's claim against Williams is prescribed because her only specific allegation against Williams is that he propositioned her for sex more than one year before she filed suit. *Id.* at p. 5. Even if that act is "lumped in" with the purported conduct of the other defendants, they submit that the allegations do not support plaintiff's IIED claim. *Id.*

On November 17, 2017, plaintiff filed a Motion to Remand on grounds that this court lacks diversity jurisdiction because Williams is a Louisiana resident. Doc. 13, att. 2. She argues that all of Williams's actions "constituted a pattern and practice of sexual harassment," [*id.* at p. 9], and

---

[2] The parties do not dispute that the amount in controversy is met here.

her claim is timely because prescription did not begin to run until she resigned. *Id.* at p. 13. Thus, she contends that Williams is properly joined and destroys diversity. *Id.* at pp. 13–14.

## II.
### LAW AND ANALYSIS

The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Any civil action brought in a State court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). If removal is based on diversity of citizenship, the action is removable only if there is complete diversity, which is found where "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)). Only the latter method is relevant here because the defendants do not allege fraud. Doc. 16, p. 2. Thus, the question is whether the defendants have shown that there is no reasonable basis by which plaintiff can recover under applicable state law. *Smallwood*, 385 F.3d at 573. A mere theoretical possibility of recovery is insufficient. *See Travis*, 326 F.3d at 648.

In reviewing a claim for improper joinder, all factual allegations are evaluated in the light most favorable to the plaintiff, with all contested issues of substantive fact resolved in plaintiff's favor. *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 309 (5th Cir. 2005). When considering whether a non-diverse defendant has been improperly joined to defeat diversity jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits

and deposition testimony." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995). In conducting this analysis, the Fifth Circuit instructs courts to apply a "standard closer to the Rule 12(b)(6) standard," *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 333–34 (5th Cir. 2004), which requires that a plaintiff plead facts sufficient to "state a claim that relief is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). To do so, the complaint "must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action." *Twombly*, 127 S.Ct. at 1965.

In this diversity case, the court applies state law to evaluate the sufficiency of plaintiff's claims. *Henry v. O'Charleys, Inc.*, 861 F.Supp.2d 767, 771 (W.D. La. 2012). The Louisiana Supreme Court has held that there are three elements to an IIED claim: (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff suffered severe emotional distress; and (3) the defendant intended to inflict severe emotional distress or was certain or substantially certain that severe emotional distress would result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). In the workplace context, Louisiana case law further requires that there be "a pattern of deliberate, repeated harassment over a period of time." *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1026 (La. 2000) (citations omitted); *see also Bustamento v. Tucker*, 607 So.2d 532, 538 (La. 1992). However, "ordinary employment disputes, even those involving discrimination and sexual harassment, will rise to the level of intentional infliction of emotional distress only in the most unusual of cases." *Booth v. Intertrans Corp.*, 1995 WL 3244631, at *1, 17 (E.D. La. 1995) (citing *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1144 (5th Cir. 1991); *Dean v. Ford Motor Co.,* 885 F.2d 300, 304–07 (5th Cir. 1989). Under Louisiana law, IIED claims are subject to a one-year prescriptive period that "does not begin until the conduct causing the damage has abated." *S. Cent. Bell Tele. Co. v. Texaco, Inc.*, 418 So.2d 531, 533 (La. 1982); La. Civ. Code art. 3492.

In the complaint, plaintiff alleges that Williams propositioned her for sex on June 23, 2016. Doc. 1, att. 1, p. 5.  After Williams was promoted to a management position in December 2016, plaintiff alleges in her Motion to Remand, the "hostility against [her] ramped up" and he and the other individual defendants continued to make sexually charged comments about her as part of "a systematic pattern of harassment amounting to extreme and outrageous conduct." Doc. 13, att. 2, pp. 10–11 (citing *Boutte v. United Parcel Serv., Inc.*, 2017 WL at *1, 5 (W.D. La. 2017)). Plaintiff contends that her allegations against Williams encompass all of his actions from when he propositioned her on June 23, 2016, until she resigned on February 24, 2017. *Id.* at p. 13. Therefore, she argues that the lawsuit filed on August 25, 2017, was timely because under the continuing tort doctrine Louisiana's one-year prescriptive period for torts did not begin to run until his conduct ceased upon her resignation. *Id.* at pp. 13–14 (citing *Bustamento*, 607 So.2d at 541; *Waltman v. Intern. Paper Co.*, 875 F.2d 468 (5th Cir. 1989)) (additional citations omitted).

In their opposition to the motion to remand, defendants submit that plaintiff's claim against Williams is prescribed because he allegedly propositioned her on June 23, 2016, but she did not file suit until August 25, 2017, over fourteen months later. Doc. 16, pp. 4–5. They argue that the continuing tort doctrine is inapplicable because plaintiff's allegations that Williams excluded her from business-related activities and communications and tried "to make her life miserable" are "clearly not 'of the same nature' as the [proposition]." *Id.* at pp. 5–6 (citing doc. 1, att. 1, ¶¶ 19–20, 36–38, 40). Defendants contend that Williams's alleged actions are not severe enough to satisfy the first element of an IIED claim because under Louisiana law "[c]onduct in the workplace, even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of 'outrageous conduct.'" *Id.* at p. 7 (quoting *Barber v. Marine Drilling Mgmt., Inc.*, 2002 WL 237848, at *1, 8 (E.D. La. 2002)).

Plaintiff's reply memorandum suggests that defendants' opposition "wholly ignores the ten additional examples of conduct where she identifies Kyle Williams by name or within the 'Cotton Management Team.'" Doc. 18, p. 1. She asserts that in addition to her allegations against Williams, "the mere presence of [her] harassers, including Williams, perpetrated the status quo of such continuous wrongful conduct." *Id.* at pp. 2–4. Plaintiff also refutes defendants' assertion that she failed to allege extreme and outrageous conduct because she made "nearly a dozen allegations involving misconduct by Kyle Williams." *Id.* at p. 5.

Accepting all of plaintiff's factual assertions as true, we nevertheless find that she fails to allege specific instances of misconduct by Williams sufficient to show that she can plausibly recover against him. Although she makes specific sexual harassment allegations against the other individual defendants by name, [doc. 1, att. 1, ¶¶ 17, 21, 24–27], her only particular allegation that Williams sexually harassed her was that he propositioned her for sex on June 23, 2016. *Id.* at ¶ 18. Plaintiff includes Williams with the other individual defendants as part of the "management team," which she claims was "directly participating in, or approv[ing] of COTTON's corporate culture and practices which created a sexually harassing and hostile work environment." *Id.* at ¶¶ 10, 12. However, because Williams was not promoted to general manager until a few months before she resigned in February 2017, it is not reasonable to impute to Williams any of the management team's alleged misconduct from the beginning of plaintiff's employment on April 10, 2015. Furthermore, her allegations of misconduct against the management team bear a much stronger relationship to her general employment discrimination claims than her sexual harassment claims; for example, she claims that because of her gender she was discriminated against "as to pay, job assignments, failure to promote, and other adverse employment actions committed by COTTON

Management Team." *Id.* at ¶ 13; *see also* ¶¶ 29–40 (alleging that she was marginalized, ignored, given duties below her position, and generally mistreated and demeaned at work).

Accordingly, plaintiff fails to allege sufficient facts to show that Williams's "acts or conduct [were] continuous on an almost daily basis, by the same actor, of the same nature." *Bustamento*, 607 So.2d at 542. Also, because plaintiff's only specific allegation of sexual harassment by Williams was that he once propositioned her, we cannot say that his conduct was "extreme and outrageous" such that it satisfies the first element of plaintiff's IIED claim under Louisiana law. Therefore, we conclude that plaintiff has not established a plausible cause of action against Williams and he was improperly joined to defeat diversity jurisdiction.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's Motion to Remand [doc. 13] be **DENIED** and that all claims against defendant Kyle Williams be **DISMISSED WITHOUT PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 25th day of July, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE