UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **WENDY M. HARPER** | : | **DOCKET NO. 2:17-cv-1337** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **COTTON LOGISTICS, INC.; ET AL.** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the court is a Motion to Dismiss [doc. 8] filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by Cotton Holdings, Inc., and Cotton Logistics, Inc. (collectively, "Cotton"); Peter J. Bell, Henry Howard "Tres" Hurst,[1] Forrest L. Jackson, Johnny L. Slaughter, Randall J. Thompson, and Kyle J. Williams (collectively, "individual defendants") (with Cotton, "defendants"). Plaintiff Wendy M. Harper opposes the motion and defendants have filed a reply. Docs. 15, 17.

For the reasons provided below, **IT IS ORDERED** that the Motion to Dismiss [doc. 8] be **DENIED AS MOOT** with respect to claims raised against Kyle J. Williams and **DENIED** as to the claims raised against the remaining defendants. Harper is given **14 days** from the date of this order to correct the deficiencies identified below, and defendants may reurge their motion if she fails to do so or if they believe that her amended pleading does not adequately address these deficiencies.

---

[1] In their memorandum in support of the Motion to Dismiss, defendants allege that Hurst is misidentified and that his real name is "Harry H. Hurst, III" or "Henry H. Hurst III." Doc. 8, att. 1, p. 1 n. 1 and accompanying text. They request that Harper be directed to amend the caption. *Id.* Harper is directed to ascertain Hurst's legal name and correct it in her amended pleading.

-1-

# I.
## BACKGROUND

This action arises from alleged harassment and discrimination suffered by Harper over the course of her employment at Cotton Holdings, Inc., and Cotton Logistics, Inc. ("Cotton"). Doc. 1, att. 1, pp. 2–11. Harper states that she was hired as a regional vice president at Cotton's office in Lake Charles, Louisiana, and "subjected to a practice of regular, systematic, and at times daily, sexual harassment and discrimination on the basis of her gender by [Cotton's] all-male senior management." *Id.* at pp. 3–4 ¶ 7. She alleges that the harassment and discrimination lasted from the time she was hired in April 2015 until she was constructively discharged in February 2017, "after she had been ostracized and her job duties marginalized by the same [Cotton] senior management team." *Id.* at pp. 3–4 ¶¶ 6–7.

Harper brought suit in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, through a complaint filed on September 21, 2017. *Id.* at pp. 2–11. There she named the individual defendants, in addition to Cotton, in her claims of discrimination in violation of the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. § 23:301 *et seq.*, defamation, and intentional infliction of emotional distress ("IIED"), and intentional interference with a contract. *Id.* The defendants removed the action to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. They now bring this Motion to Dismiss, asserting that Harper fails to state a claim on which relief can be granted against the individual defendants on the LEDL claims and against all defendants on the defamation, IIED, and contract interference claims. Doc. 8.

This court has already recommended that all claims against Kyle Williams be dismissed without prejudice because he was improperly joined in order to defeat diversity [doc. 19] and Harper states in her response that she does not seek to hold any individual defendant liable under the LEDL claims, and points out that she has not alleged that any defendant was her employer as

required to establish liability under the LEDL. Doc. 15, p. 6. Accordingly, we now analyze the sufficiency of the defamation, IIED, and interference with a contract claims against all defendants except Williams, whom we have already determined was improperly joined, in order to resolve the motion.

## II.
## LAW & ANALYSIS

### A. *Rule 12(b)(6) Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus exclusively on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). Such motions are also reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor will a complaint suffice if it tends naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (cleaned up). Instead, the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). Accordingly, the court's task in evaluating a motion to dismiss under Rule 12(b)(6) is "not to evaluate the plaintiff's likelihood of success," but instead to determine whether the claim is both legally cognizable and plausible. *Billups v. Credit*

*Bureau of Greater Shreveport*, 2014 WL 4700254, *2 (W.D. La. Sep. 22, 2014) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### B. Review of Claims

#### 1. Defamation

Harper alleges that she was defamed when defendants Thompson and Hurst told other employees that she "was undergoing a 'mental assessment.'" Doc. 1, att. 1, p. 7 ¶ 32. The defendants urge that these allegations do not support a claim of defamation, and that even if they do, such claim is now prescribed under Louisiana law. Doc. 8, att. 1, pp. 13–15.

##### a. Prescription

A federal court sitting in diversity jurisdiction applies the forum state's substantive law, including its prescriptive periods. *E.g.*, *Schoemann v. Murrell*, 2012 WL 1802513, at *3 (E.D. La. May 16, 2012) (citing *Guaranty Trust Co. of N.Y. v. York*, 65 S.Ct. 1464, 1470–71 (1945)). Defamation is a delictual action (tort) subject to a one year liberative prescription period under Louisiana law. *See, e.g.*, *Alexander v. La. State Bd. of Private Investigator Examiners*, 211 So.3d 544, 555 (La. Ct. App. 4th Cir. 2017) (citing La. Civ. Code art. 3492); *Ioppolo v. Rumana*, 2012 WL 4960385, at *5 (M.D. La. Oct. 16, 2012). This period "commences to run from the day injury or damage is sustained." La. Civ. Code art. 3492. Damages are ordinarily sustained on "the date the injury is inflicted, if immediately apparent to the victim," even though the extent of the injury might remain unknown. *Collinson v. Tarver Land Dev., LLC*, 2012 WL 688551, at *1 (W.D. La. Feb. 1, 2012), *report and recommendation adopted*, 2012 WL 692193 (W.D. La. Mar. 2, 2012). Under the doctrine of *contra non valentem*, however, prescription does not begin to accrue until the plaintiff's cause of action known or reasonably knowable by the plaintiff, regardless of whether the defendant induced the plaintiff's ignorance. *Alexander*, supra, 211 So.3d at 559.

Harper admits that the alleged defamatory statement was made in February 2016 but asserts that she did not learn of it or its communication to her coworkers until nearly a year later. Doc. 15, pp. 20–21. Specifically, she alleges that the human resources vice president's statement was communicated to other employees, not including Harper, in an email dated February 13, 2016, and that she (Harper) did not see this email until January 2017, about eight months before she filed suit. *Id.* Defendants maintain, however, that the allegation is not properly before the court and that the claim should be dismissed as prescribed based on Harper's failure to allege these facts in her complaint. Doc. 17, p. 8. As the Fifth Circuit has noted, a prescriptive defense supports dismissal under Rule 12(b)(6) "where it is evident from the plaintiff's **pleadings** that the action is barred and the **pleadings** fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (emphasis added). Harper only asserts her basis for *contra non valentem* in her opposition to this motion. We decline to dismiss the claim based on this omission, however, and will instead grant Harper leave to amend, as she has requested [doc. 15, p. 24]. If Harper fails to file the amended pleading setting forth the facts alleged in her opposition in the time set forth below, or if defendants otherwise believe that her additional allegations do not show that the claim is timely, the defendants may renew their motion to dismiss this claim on prescription grounds.

### b. Merits

To maintain a defamation claim, a plaintiff must show the following elements: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So.2d 196, 198 (La. 1980). The defendants maintain Harper's defamation claim must be dismissed because the alleged statement about undergoing a mental assessment did not involve false or defamatory words. Doc. 8, att. 1, p. 14. They also assert that they are entitled to qualified privilege. *Id.* at 14–15.

"The threshold issue in a defamation action is whether the complained of words are defamatory, i.e., capable of a defamatory meaning." *Wattigny v. Lambert*, 408 So.2d 1126, 1131 (La. Ct. App. 3d Cir. 1981). "Words are defamatory which tend to expose a person to contempt, hatred, ridicule, or disgrace, or to injure him in his reputation, occupation, or public standing." *Fourcade v. City of Gretna*, 598 So.2d 415, 419 (La. Ct. App. 5th Cir. 1992). To judge the defamatory character of a statement, consideration must be given to the entire statement and the words must be construed "according to the meaning that will be given them by reasonable individuals of ordinary intelligence and sensitivity." *Weatherall v. Dep't of Health and Human Res.*, 432 So.2d 988, 993 (La. Ct. App. 1st Cir. 1983).

Here the alleged defamatory statement came in the form of a communication that Harper was undergoing a mental assessment, which was made to "other employees" and reached the vice president of human resources Gracie Cardenas. Doc. 1, att. 1, p. 7 ¶ 32; *see id.* at pp. 5–6 ¶ 23 (first spelling of name). This information allegedly led Cardenas to tell at least one other coworker that he must wait for the results "from THOMPSON and HURST's 'mental assessment' before he was allowed to talk with Ms. Harper." *Id.* Defendants assert that "[t]here is no shame or ridicule involved in undergoing a mental assessment" [doc. 8, att. 1, p. 14], as though such information is not sensitive and could not be communicated for the purposes of undermining or stigmatizing a colleague. From the context of this alleged communication, to the vice president of human resources, and the evident effect it had through Cardenas allegedly revealing the information to another employee and cautioning him not to speak to Harper, the words were plainly capable of defamatory meaning based on their tendency to expose Harper to injury in her reputation or occupation.

Defendants also allege that Harper has not pleaded that the alleged defamatory statements were false. Doc. 8, att. 1, p. 13. In her response, Harper maintains that the statements are false and asserts that, while she did receive treatment for depression and other ailments during her employment with Cotton, "she did not have any knowledge of any 'mental assessment' purportedly being performed by Thompson or Hurst, and she certainly did not participate in any such assessment."[2] Doc. 15, p. 21. However, she does not provide any indication of the statement's falsity in her complaint and must amend her pleading in this regard.

Finally, defendants allege that they are entitled to qualified privilege on the defamation claims. Doc. 8, att. 1, pp. 14–15. Publication of a defamatory statement "enjoys a qualified or conditional privilege if made (a) in good faith; (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty; and, (c) to a person having a corresponding interest or duty." *Clements v. Ryan*, 382 So.2d 279, 282 (La. Ct. App. 4th Cir. 1980) (quoting *Ward v. Sears, Roebuck & Co.*, 339 So.2d 1255, 1261 (La. Ct. App. 1st Cir. 1976)). Thus, "communications between appropriate persons within the employer's walls, concerning allegations of conduct by an employee that bears on the employer's interest, are subject to the qualified privilege if made in good faith." *Martin v. Lincoln Gen. Hosp.*, 588 So.2d 1329, 1333 (La. Ct. App. 2d Cir. 1991). "In this context good faith means a statement made with reasonable grounds for believing it to be true." *Clements*, 382 So.2d at 282 (quoting *Ward*, 339 So.2d at 1261).

As some Louisiana courts have noted however, the defense of qualified privilege must be specially pleaded. *Gianfala v. Allemand*, 444 So.2d 150 (La. Ct. App. 1st Cir. 1983). Because the defendant is required to support this defense with some evidence, it cannot be raised by the

---

[2] In her complaint Harper does not specify whether the alleged defamatory statement specified that the "mental assessment" was performed by or at the direction of Hurst and/or Thompson. She does, however, assert that the vice president of human resources received from that statement the impression that it was "THOMPSON and HURST's 'mental assessment.'"

peremptory exception of no cause of action. *Id.* The matter is likewise inappropriate for consideration in a 12(b)(6) motion, because defendants cannot introduce evidence in support of their claim that they acted in good faith, nor can the court make credibility determinations with respect to that contention. *Dikan v. Cypress Bend Resort*, 2013 WL 2244635, at *4 (W.D. La. May 21, 2013). Accordingly, Harper's claim is sufficiently pleaded on the merits to survive a 12(b)(6) motion, except for her failure to allege the defamatory statement's falsity. She is therefore granted leave to amend in this regard, and defendants may reurge their motion if she fails to do so or if they believe that the amendment does not cure the deficiency.

    2. ***Intentional Infliction of Emotional Distress (IIED)***

To recover for the intentional infliction of emotional distress under Louisiana law, a plaintiff must establish (1) that the defendant's conduct was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *Glenn v. Boy Scouts of Am.*, 977 F.Supp. 786, 788–89 (W.D. La. 1997) (citing *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)). "Conduct in the workplace, even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of 'outrageous conduct.'" *Barrera v. Aulds*, 2016 WL 3001126, at *8 (E.D. La. May 25, 2016) (quoting *Clayton v. John H. Stone Oil Distrib., LLC*, 2012 WL 4359293, at *10 (E.D. La. Sep. 21, 2012)). "Ordinary employment disputes, even those involving discrimination and sexual harassment, will rise to the level of [IIED] only in the most unusual of cases," that is "situations . . . where the distress is more than a reasonable person could be expected to endure." *Id.* (cleaned up). This standard is not insurmountable, however, and may be satisfied by "deliberate, repeated harassment over a period of time," so long as the employee suffered adequate

distress and the defendant's conduct was "intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment, or worry." *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1026–27 (La. 2000); *Fletcher v. Wendelta, Inc.*, 999 So.2d 1223, 1230–31 (La. Ct. App. 2d Cir. 2009).

The defendants maintain that Harper has not provided sufficient allegations to show sufficiently outrageous conduct committed with the requisite intent by the defendants, or that she suffered severe emotional distress as a result. Doc. 8, att. 1, pp. 8–12. Harper alleges that the individual defendants are solidarily liable, and that Cotton is vicariously liable as their employer, for intentional infliction of emotional distress based on the following allegations, among others:

- The individual defendants regularly subjected her to obscene gestures and inappropriate sexual commentary about her appearance, "including commentary of her hypothetical sexual activities and relationships." Doc. 1, att. 1, p. 5 ¶¶ 15–16. Defendant Bell propositioned her at their first meeting. *Id.* at p. 5 ¶ 17. Later, he questioned and "counseled" Harper about her physical appearance, telling her that her recent weight gain had caused her depression and made her "distant" and "not part of the team." *Id.* at p. 5 ¶ 23.

- Defendants Bell, Jackson, and Slaughter would tell her, in front of other employees, to "take one for the team," insinuating that she should have sex with potential clients to gain work for Cotton. *Id.* at p. 6 ¶ 24. The individual defendants "relentlessly question[ed]" Harper about whether she was having a sexual relationship with a married coworker and made repeated inquiries about her sex life, in front of other employees. *Id.* at p. 6 ¶ 25.

- Defendant Hurst "engaged in a regular practice of sexual harassment and degradation" toward Harper, including making obscene gestures at her in public and offensive inquiries about her sexual activities in front of other employees and other members of the Cotton management team. *Id.* at p. 6 ¶ 26. He also suggested in front of other employees that Harper wear a "Catholic School skirt uniform" as her regular office attire and then said he would "office" under her desk, while making an obscene gesture. *Id.* at p. 6 ¶ 27.

- Defendants Hurst, Bell, and Thompson "practiced acts of regular public humiliation" against Harper, "making profane, negative outbursts

> against her in public meetings with her co-workers, or to [her] individually." *Id.* at p. 6 ¶ 28.
>
> - Defendants Hurst, Thompson, and Slaughter intentionally gave Harper work assignments that would make it more difficult for her to spend her off-duty time in Lake Charles with her teenage son. *Id.* at p. 6 ¶ 29.
>
> - Hurst, Jackson, and Slaughter refused to respond to Harper's work-related emails, and Hurst would poach and reassign Harper's sales leads and business development contacts, in order to sabotage Harper's "efforts to gain sales and meet the expectations aggressively communicated to her." *Id.* at p. 7 ¶¶ 34–36.

Defendants attempt to show that these allegations do not point to sufficiently outrageous conduct, relying in particular on *Smith v. Amedisys, Inc.*, 298 F.3d 434 (5th Cir. 2002).[3] There the court affirmed a grant of summary judgment on plaintiff's IIED claims relating to physical and verbal sexual harassment. 298 F.3d at 449–50. As Harper points out, however, both the district court and Fifth Circuit's holdings rested on the plaintiff's inability to show that she had actually suffered severe emotional distress – not whether the defendants' conduct, which included sexual advances, suggestions that the plaintiff prostitute herself to obtain business for the company, and comments about the plaintiff's sex life, was sufficiently outrageous. *Id.* at 437–38, 449–50. Here Harper alleges nearly two years of sexual harassment and humiliation in front of her coworkers at the hands of **multiple** superiors, along with efforts by some of those superiors to intimidate her and deliberate endeavors on their part to undermine her job performance. Accordingly, Harper's allegations suffice to show the requisite intent and outrageousness of the defendants' alleged conduct.

---

[3] Defendants also analogize Harper's IIED claims to those rejected in *Washington v. Mother Works, Inc.*, 197 F.Supp.2d 569, 572–73 (E.D. La. 2002), and *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So.2d 1049, 1050–52 (La. Ct. App. 3d Cir. 1992). Doc. 8, att. 1, pp. 11–12. In *Washington*, plaintiff complained of racial harassment but her allegations involved just one defendant, who supervised the plaintiff for only seven weeks. 197 F.Supp.2d at 572–74. *Beaudoin* likewise only involved harassment by a single supervisor. 594 So.2d at 1050–52. Additionally, while the plaintiff in that matter maintained that the defendant regularly screamed at her and called her names, she did not allege any sexual advances or other humiliations of that nature, or deliberate efforts to sabotage her job performance. *Id.* Accordingly, Harper's allegations are readily distinguished from both cases.

Finally, Harper alleges that she suffered "weight gain, high blood pressure, severe headaches, nausea, depression, and other ailments for which she sought medical treatment" in addition to a general complaint of "extreme emotional distress." Doc. 1, att. 1, p. 4 ¶ 9; *id.* at p. 8 ¶ 41. The defendants maintain that these allegations are insufficient to state a claim for IIED. Doc. 8, att. 1, pp. 12–13. They rely on *Held v. Aubert*, 845 So.2d 625, 633–34 (La. Ct. App. 1st Cir. 2003), where the court stated that "[s]erious emotional distress may be found where a reasonable person . . . would be unable to cope adequately with the mental distress engendered by the circumstances of the case." It went on to note that "[a] non-exhaustive list of serious emotional distress includes neuroses, psychoses, chronic depression, phobia, and shock." *Id.* at 634.

Harper has alleged that she generally suffered "extreme emotional distress," including depression, and that she sought medical treatment as a result. The dicta in *Held*, which related to the jury's award of damages to the parents of a birth-injured infant for the parents' emotional distress, does not show that Harper is required to specify whether her depression was chronic or whether she was diagnosed with any other condition in the non-exhaustive list in order to state a claim for IIED. Accordingly, Harper has sufficiently pleaded this element of her claim.

### 3. *Interference with a contract*

"The tort of intentional interference with a contract . . . applies to a corporate officer interfering with his employer's contractual relations with third persons." *Miller v. Desoto Reg. Health Sys.*, 128 So.3d 649, 658 (La. Ct. App. 3d Cir. 2013) (quotations omitted). The claim is divided into five elements:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; [and] (5) causation of damages to the plaintiff by

> the breach of contract or difficulty of its performance brought about by the officer.

*Id.* (quoting *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La. 1989)). Accordingly, such a claim turns on the plaintiff's ability to allege a contract and breach thereof.

Relevant to her contract interference claim, Harper alleges the following:

> Prior to Cotton's offer of employment to Ms. Harper, Ms. Harper and Bell discussed Cotton buying and acquiring from Ms. Harper her human resources and recruiting firm, CGI Staffing Solutions, Inc., ("CGI"). . . .
>
> Ultimately, Cotton did not buy CGI. However, Cotton, through Slaughter and Bell, both promised Ms. Harper that Cotton would take care of CGI's lease obligations by either paying the monthly rental payments, subleasing the space, or negotiating a buy-out of the lease.
>
> Upon information and believe, Cotton made several payments on CGI's lease obligations, then stopped without explanation or justification.
>
> Upon information and belief, Bell and Slaughter intentionally interfered with a contract between Cotton and Ms. Harper when they caused Cotton to breach its agreement with Ms. Harper by failing to pay office lease obligations for CGI and Ms. Harper . . . .

Doc. 1, att. 1, pp. 9–10 ¶¶ 51–54 (cleaned up). Defendants assert that Harper has not pointed to the existence of a contract, and that her allegations instead show "nothing more than a gratuitous oral promise to pay the lease, which is plainly unenforceable," because "agreements as to immovable property" must be in writing to be enforceable under Louisiana law. Doc. 8, att. 1, p. 16 (citing *Ogden v. Ogden*, 643 So.2d 245, 248 (La. Ct. App. 3d Cir. 1994)). As Harper emphasizes, however, a lease may be verbal even if it relates to immovable property. *D'Antonio v. Simone*, 653 So.2d 678 (La. Ct. App. 5th Cir. 1995); *see* La. Civ. Code. art. 2681. There is no basis for determining that Cotton's alleged agreement to pay or assume Harper's lease was unenforceable between the two parties because it was not reduced to writing. Additionally, despite defendants' assertion that the term was only a "gratuitous . . . promise," Harper's allegations support a

conclusion that the promise was part of a bargained-for exchange relating to Harper's agreement to accept a job at Cotton. Defendants thus show no basis for dismissal of this claim.

## III.
### CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion to Dismiss [doc. 8] be **DENIED AS MOOT** with respect to claims raised against Kyle J. Williams and **DENIED** as to the claims raised against the remaining individual defendants. Harper is given **14 days** from the date of this order to correct the deficiencies identified above, and defendants may reurge their motion if she fails to do so or if they believe that her amended pleading does not adequately address these deficiencies.

THUS DONE this 30th day of August, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE